Filed 9/8/16  In re Patrice P. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re PATRICE P., a Person Coming Under the Juvenile Court Law. | B268919 |
| _____<br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANK P.,<br><br>    Defendant and Appellant. | (Los Angeles County<br>Super. Ct. No. CK87089) |

APPEAL from orders of the Superior Court of Los Angeles County, Hon. Emma Castro, Referee.  Reversed in part and affirmed in part, with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, Kim Nemoy, Principal Deputy County Counsel for Plaintiff and Respondent.

Frank P. (father) challenges jurisdictional and dispositional findings and orders made by the juvenile court in connection with a Welfare and Institutions Code section 300 petition filed on behalf of his daughter, Patrice P.[1]  With regard to jurisdiction, father asserts error with regard to only one of two jurisdictional findings made by the juvenile court, and thus we decline to address the evidentiary support for that finding.[2]  With regard to disposition, because Patrice was not residing with father when the juvenile dependency petition was initiated, the juvenile court erred in ordering Patrice removed from father pursuant to section 361, subdivision (c).  We thus reverse the portion of the dispositional order removing Patrice from father's custody pursuant to section 361, subdivision (c); in all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Detention

Patrice, born in November 2002, is the child of D.T. (mother) and father.  Patrice's half-brothers, X.T. (born in April 2006), R.M. (born in January 2009), and S.M. (born in July 2011), have different fathers and are not subjects of this appeal.

On August 21, 2014, mother contacted the Los Angeles County Department of Children and Family Services (DCFS) hotline and asked that Patrice, then 11 years old, be removed from her care.  When the children's social worker (CSW) arrived at the family's home, mother was crying and said an ambulance had just taken Patrice to the hospital because she may have swallowed "a whole bunch of" pills.  Mother reported that Patrice was abusive to her three younger brothers and had said she wished her brothers would die.  Mother said Patrice's behavior became dramatically worse after she stayed with father for a month in January 2014; mother said she had questioned Patrice about

---

[1]    All subsequent statutory references are to the Welfare and Institutions Code.

[2]    We do, however, order stricken from the sustained petition a single sentence added by the juvenile court after the close of evidence.

2

bullying and sexual abuse, but Patrice had not disclosed anything and refused to speak to a therapist.

Patrice told the CSW she had not swallowed pills, although she had thought about doing so. She said mother disciplined her physically about once per month and once hit her with an extension cord. She did not remember the last time she saw father. She said she lived with father once for a short time and he told her things about her mother, including that mother was jealous of Patrice, Patrice was smarter than mother, and mother "can be really crazy sometimes so don't listen to her." When asked if anything significant had happened in her life to change her, Patrice said there were girls at school who told her she did not have to listen to mother and she agreed with them.

X.T. denied any physical discipline and said mother disciplined the children by sending them to bed. R.M. said mother disciplined him by "whoop[ing]" him with a belt and disciplined Patrice by hitting her "with anything." Both boys denied drug or alcohol use in the home and said they felt safe with mother.

Mother said father beat her up when she was pregnant with Patrice. Recently, father "shot up [mother's] house this year, got arrested and sent back to jail for evading police and for gun possession." Father was incarcerated in state prison.

On August 22, 2014, mother told the CSW that she "cannot do it anymore" and would let Patrice live with paternal aunt Ruby. On August 25, however, Patrice moved back home with mother, and on August 29, mother agreed to a voluntary family maintenance contract. On September 2, mother again told the CSW she could no longer have Patrice in her home because she feared for the safety of her sons, and she asked that Patrice be removed.

A CSW assessed that Patrice was at very high risk of future abuse and neglect by mother. As to father, the CSW said "emotional abuse from . . . father [is] very prevalent in [Patrice's] relationship with her mother. Patrice reported that her father told her that her mother is crazy, she is smarter than her mother, she does not have to listen to her mother, and Patrice believes it." The CSW recommended that Patrice's half-brothers remain home with mother, and that Patrice be detained in foster care.

3

On September 5, 2014, mother stated in a parentage questionnaire that father openly held himself out as Patrice's parent, but that he had not received Patrice into his home. She indicated that father visited Patrice, but provided no substantial financial support.

## II.

## Petition

DCFS filed a juvenile dependency petition on September 5, 2014. It alleged that Patrice and her siblings were subject to juvenile court jurisdiction pursuant to section 300, subdivisions (a), (b), (g), and (j) as follows:

a-1, a-2, b-1, b-2: On prior occasions, mother struck Patrice with her hands, a belt, and an extension cord, and struck Patrice's half-brother with a belt.

b-3, g-3: Mother is unable and unwilling to provide appropriate care and supervision to Patrice.

j-1, j-2, j-3: Mother's physical abuse of Patrice and her half-brother, and her inability to provide care and supervision of Patrice, endanger Patrice's siblings.

On September 5, the juvenile court found a prima facie case for detaining Patrice and for finding she was a child described by section 300.

## III.

## Jurisdiction/Disposition

### A. *Jurisdiction/Disposition Reports*

The jurisdiction/disposition report, dated October 30, 2014, stated as follows. In September and October 2014, Patrice was removed from two different foster homes at the caregivers' requests. Both caregivers reported that Patrice lied frequently, was disrespectful, and refused to follow house rules; one caregiver also reported that Patrice had attempted to start a fire in the home.

Father had been sentenced to three years in state prison in June 2014 and was not expected to be released until 2017. Mother reported that father was a member of the Long Beach Insane Crips and was "very violent." She said father beat her when she was pregnant, once held a gun to her head, and beat her because he blamed her for the death

4

of their first child. Mother said father "likes guns" and did not control his temper. Patrice told the CSW that father in the past had hit her with a belt because she did not do her homework as directed.

DCFS reported that father had a lengthy criminal history, which included the following: (1) In 2003, father was arrested and charged with carjacking, robbery, and taking a vehicle without consent; the following year, the carjacking and vehicle theft charges were dismissed, and father pled guilty to second degree robbery involving a firearm and was sentenced to six years in prison; (2) In 2009 and 2010, father violated parole by failing to appear, fighting in public, and resisting arrest; (3) In 2010, father was convicted of firearm possession by a felon and sentenced to 32 months in prison; and (4) In 2014, father was convicted of firearm possession by a felon and sentenced to 32 months in prison.

DCFS recommended that mother receive family reunification services, including counseling to address parenting issues and conjoint counseling with Patrice. DCFS recommended that father not receive family reunification services because "[t]he length of father's incarceration exceeds the legal timeframes that reunification services could be offered."

On January 22, 2015, DCFS filed a first amended petition that alleged a new paragraph b-4, as follows: "[Father] is currently incarcerated and is serving 32 months for Felon in Possession of a Firearm. Further, the child's father has a criminal history for Robbery, Carjacking, and Violent Gang Injunction. Moreover, the father is an alleged gang member of the Long Beach Crips. Such criminal history endangers the physical and emotional health and safety of the child and renders the child's father unfit to provide care and supervision of the child.

An interim review report, dated January 22, 2015, reported that mother expressed concern for her own and her children's safety upon father's release from prison, saying that he lived a violent, criminal lifestyle. Patrice reported that father had been the victim of a shooting during the brief period she was in his care, and he would frequently leave her in the care of unfamiliar women, whom he referred to as his girlfriends.

5

*B.      Hearings*

On April 16, 2015, mother pled no contest to the petition as amended.  Based on mother's plea, the court found by a preponderance of the evidence that count b-1, as amended[3], was true, and dismissed counts a-1, a-2, b-2, b-3, g-3, j-1, j-2, and j-3.

Father contested count b-4, urging through his counsel that although he had a criminal history, there was no evidence his criminal history had ever endangered Patrice.  Father also urged there was no evidence he was a member of a gang.

After hearing argument, the court amended count b-4 by striking the sentence alleging father was a gang member, and adding the following sentence to conform to proof:  "[Mother] reports [father] has been physically abusive to her, incl[uding] holding a gun to her head and beating her when she was pregnant."  The court then sustained count b-4 as amended.

The dispositional hearing commenced on April 28, 2015, and was continued several times.  As relevant to this appeal, father appeared at the hearings and told the court he expected to be released from custody in November 2015.  He said he had last seen Patrice a year and a half earlier, and that she had stayed with him during summer vacations and "off and on on the weekends."

Following the close of testimony, the court found by clear and convincing evidence that there would be substantial danger to Patrice's physical and emotional well-being if she were returned to father, ordered Patrice removed from father, and ordered her placed with mother under DCFS supervision.

Father timely appealed.

---

**3**      Count b-1, as amended, provided:  "On a prior occasion, the child [Patrice's] mother . . . inappropriately physically disciplined the child Patrice by striking the child on the buttocks with a belt.  The inappropriate physical discipline of the child by the mother placed the child, and the child's siblings . . . at risk of harm."

## DISCUSSION

## I.

## We Decline to Exercise Our Discretion to
## Reach Father's Jurisdictional Claim

Father's sole jurisdictional challenge is to paragraph b-4 of the petition, which, as amended by the court, alleges: "[Father] is currently incarcerated and is serving 32 months for Felon in Possession of a Firearm. Further, the child's father has a criminal history for Robbery, Carjacking, and Violent Gang Injunction. Such criminal history endangers the physical and emotional health and safety of the child and renders the child's father unfit to provide care and supervision of the child. [Mother] reports [father] has been physically abusive to her, incl[uding] holding a gun to her head and beating her when she was pregnant." Father contends the portion of the jurisdictional order sustaining paragraph b-4 should be reversed because it is not supported by substantial evidence.

DCFS acknowledges that because the allegation of domestic violence was not added until after the close of evidence, father had no reason to introduce evidence on this issue; DCFS thus says it has "no objection to" the court striking the last sentence of paragraph b-4. We agree that this sentence should be stricken.

As to the remainder of paragraph b-4, DCFS urges that we need not consider father's jurisdictional challenge on the merits. For the reasons that follow, we agree.

"It is commonly said that the juvenile court takes jurisdiction over children, not parents. [Citations.] While this is not strictly correct, since the court exercises *personal* jurisdiction over the parents once proper notice has been given [citation], it captures the essence of dependency law. The law's primary concern is the protection of children. [Citation.] The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated. . . . [¶] As a result of this focus on the child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by

7

one of the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent." ' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. [Citations.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.)

Notwithstanding the foregoing, "we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

Father urges that we should exercise our discretion to consider his challenge to the finding sustaining paragraph b-4 of the petition because (1) that finding was the basis of the court's dispositional order removing Patrice from his custody, and (2) "[t]he true finding that [father] poses a risk of harm to his daughter could . . . have negative effects in the future in a number of ways, including on father's inability to preserve his parental relationship with Patrice in the event placement with mother fails and reunification efforts prove fruitless."

In the next section, we reverse the portion of the dispositional order father challenges; thus, the dispositional order does not provide a basis for review of the jurisdictional finding. As to the possible effects of the challenged jurisdictional finding on father's ability to preserve his parental rights, father does not articulate any ways in which the finding could prejudice him, and we cannot conceive of any. The essence of that finding is father's lengthy criminal history, the existence and details of which father does not dispute. Given that father's criminal history is undisputed, we fail to see how a jurisdictional finding based on that history could affect a court's future willingness to place Patrice with father. That is, should the future necessity arise for a court to make a placement or custody decision, a court will determine that father's lengthy criminal history is disqualifying, or not—but we do not believe that the jurisdictional finding based on that history will cause a court to be any *less* likely to place Patrice with father.

For all of these reasons, we therefore decline to exercise our discretion to consider father's jurisdictional challenge on the merits.

## II.

### The Juvenile Court Erred in Entering a Dispositional Order
### "Removing" Patrice from Father's Custody

Father contends the juvenile court erred in entering a dispositional order purporting to remove Patrice from his custody. We agree.

In relevant part, section 361, subdivision (c) provides: "A dependent child shall not be taken from the physical custody of his or her parents or guardian or guardians *with whom the child resides at the time the petition was initiated*, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive . . . ." (Italics added.) It is undisputed that Patrice did not reside with father when the petition was initiated—indeed, at that time father was serving a 32-month sentence in state prison. Thus, as a matter of law, section 361, subdivision (c) did not apply. (See *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1494; *In re Christopher*

9

*M*. (2014) 228 Cal.App.4th 1310, 1317, fn. 5.)  The juvenile court therefore erred in ordering Patrice removed from father's custody pursuant to section 361, subdivision (c).[4]

We note that our reversal of this portion of the juvenile court's dispositional order has no practical consequences for Patrice's custody or placement.  As we have said, because Patrice did not live with father when the dependency petition was filed, the juvenile court erred in ordering her "removed" from his physical custody.  However, father has not challenged Patrice's placement with mother; thus, we have no occasion to review that order, which remains in place.

## DISPOSITION

The last sentence of paragraph b-4 of the sustained petition is ordered stricken, and the dispositional order is reversed to the extent that it ordered Patrice removed from father's custody pursuant to Welfare and Institutions Code section 361, subdivision (c). In all other respects, we affirm.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

LAVIN, J.                                        STRATTON, J.[*]

---

[4]       A non-custodial parent may seek placement of a child pursuant to section 361.2, subdivision (a).  However, because father did not seek to have Patrice placed with him, section 361.2, subdivision (a) is inapplicable.

[*]       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.